MARY COOK, AS ADMINISTRATRIX OF THE GOODS AND CHATTELS AND CREDITS OF JOHN F. GAYNOR, DECEASED, APPELLANT, v. AMERICAN SMELTING AND REFINING COMPANY, RESPONDENT.

Argued July 2, 1923—Decided November 19, 1923.

1. A motion to direct a verdict is in effect a demurrer to the evidence and entirely under the control of the court. When the court directs a verdict it in effect takes the case from the jury and molds the verdict itself.

2. At the close of the case and in the absence of the jury, counsel for defendant moved for a direction of a verdict, which was granted. This direction and entry of the verdict by the clerk, in the absence of the jury, if error at all, was merely technical and insufficient to cause reversal in the presence of the Practice act (1912), section 27, which prohibits reversal for any error in procedure that does not affect the substantial rights of a party.

3. Application was made for a rule to show cause why the judgment should not be vacated as improvidently entered in that no verdict of the jury was rendered, and, subsequently, application was made for an order directing the judgment to be set aside for the same reason, both of which were denied. *Held*, these denials were not an abuse of discretion, and, therefore, are not the subject of appeal; besides, they were right.

4. The cause of the explosion resulting in the accident which caused the death of plaintiff's intestate was not proved; and the evidence submitted on behalf of the plaintiff failed to show that the accident to her intestate was the result of any lack of care which defendant owed to the deceased. *Held*, the direction of a verdict for the defendant was proper.

On appeal from the Hudson County Circuit Court.

For the appellant, *Alberico O. Ciccarelli* and *Frederic B. Scott.*

For the respondent, *Marshall Van Winkle* and *Frank G. Turner.*

The opinion of the court was delivered by

WALKER, CHANCELLOR. This was a suit in the Hudson Circuit and resulted in a judgment for defendant as on a directed verdict. When the motion was granted the jury was absent and they were not polled. The jury, if present and instructed by the court to return a verdict for the defendant, would not have been at liberty to disregard the direction, and any verdict rendered in defiance of it would have been instantly set aside and the jurors would have been liable to answer for contempt of court.

A motion to direct a verdict is in effect a demurrer to the evidence and entirely under the control of the court. *Hayward v. North Jersey Street Railway Co.*, 74 N. J. L. 678. When the court directs a verdict it in effect takes the case from the jury and molds the verdict itself. At the close of the case counsel for defendant moved for the direction, and the judge observed that he was unable to see from the evidence that there was anything to submit to the jury and for that reason the motion to direct should be granted. Counsel for plaintiff excepted to the judge's ruling. There was no exception or objection to the fact that the jury was absent when the verdict was directed. Assuming, however, that the question is properly raised, the error, if any, is a mere technical one, not affecting the merits. And this court, in *Higgins v. Egg*, 87

*N. J. L.* 185, said (at *p.* 188) that the attempt to reverse the judgment therein because of an irregularity that did not go to the question of jurisdiction or of judicial authority, fell within the provision of the Practice act of 1912, which by its twenty-seventh section prohibits the reversal of a judgment for any error in procedure that does not affect the substantial rights of a party, and by this the court was bound. So it is in this case. The plaintiff can take no advantage from the court having directed a verdict in the absence of the jury, which the clerk entered. Counsel afterwards applied for a rule to show cause why the judgment should not be vacated as improvidently entered in that no verdict of the jury was ever rendered, which the trial court refused to grant. Subsequently, plaintiff applied for an order directing the judgment to be set aside for the same reason, which was also denied. These denials were not an abuse of discretion and therefore are not the subject of appeal. Besides, they were right.

Now, as to the meritorious question: The cause of the explosion resulting in the accident which caused the death of the plaintiff's intestate was not proved. Another company was engaged in erecting what is known as a waste heat boiler in one of the defendant's buildings, and plaintiff's intestate was an employe of the former. A ten-inch pipe was used to convey steam from the boilers into the main steam line itself. Near the end of the ten-inch steam line was a tee and a piece of pipe was put on the end of it, so it would carry the line to a supporting truss. The pipe was drained by what is known as a steam trap, which is a machine so constructed that the condensation from the steam would run down into the trap, and when a certain amount of water got into it it opened and ejected the water collected. A one-inch pipe ran down from the ten-inch steel line into the trap, which was one for high-pressure work. The master mechanic passed the point where the trap was about three-quarters of an hour before the accident, and it was working. The trap blew water into the atmosphere about every fifteen minutes. The ten-inch pipe was extra heavy steel pipe, of which the

line was constructed, and was of sufficient strength for two hundred and fifty pounds pressure to the square inch, and the maximum pressure was one hundred and fifty pounds; minimum one hundred and thirty-one pounds; average pressure one hundred and forty-two pounds during twenty-four hours. The deceased was standing on a platform at the time of the accident, when an explosion occurred in the main ten-inch steam line, about twenty-five feet from the place where he was, which blew him off the platform, as a result of which explosion and consequent fall, he died. At the time of the accident the pressure on the steam line was one hundred and forty-five pounds to the square inch. The water gauges for the boilers were about half full, the proper height. The boilers were fed by automatic feed pumps, that would, and did, operate if the water got below half full, and a man watched the gauges and pumps to make sure they worked correctly. The traps were standard ones, used in various steam plants throughout the country.

The complaint alleges that the deceased was in the employ of Babcock & Wilcox Company, who were erecting a certain boiler for the defendant company at its plant, and, while deceased was so lawfully employed, a steam flange blew off the main line, caused from the negligence of defendant, its agent, servant or employe, causing an explosion, as a result of which deceased was blown into the air and fell to the ground, receiving injuries from which he died.

The plaintiff having thus alleged negligence on the part of the defendant, carried the burden of proving it by circumstances from which defendant's want of due care would be an ultimate inference. This the plaintiff failed to do, and therefore the doctrine of *res ipsa loquitur* did not apply. *Bien* v. *Unger,* 64 *N. J. L.* 596.

The proof submitted on behalf of the plaintiff failed to show that the accident to her intestate was the result of any lack of care on its part which the defendant company owed to the deceased. The result was that the direction of a verdict for the defendant company was proper. *Piver* v. *Pennsylvania Railroad Co.,* 74 *N. J. L.* 619.

A plaintiff to succeed must show by evidence, not only such circumstances as would justify the inference of the defendant's negligence, but which would exclude the idea that the accident was due to a cause with which the defendant was unconnected. *McCombe* v. *Public Service Railway Co.*, 95 *N. J. L.* 187.

For the reasons above expressed the judgment under review must be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TREN-CHARD, KATZENBACH, WHITE, HEPPENHEIMER, ACKERSON, VAN BUSKIRK, JJ. 8.

*For reversal*—PARKER, KALISCH, BLACK, JJ. 3.